UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMA MUMA,

    Plaintiff,

v.

    Case No. 22-cv-10414
    Hon. Matthew F. Leitman

HAPPY SMILES, LLC;
AUTOMATION ALLIANCE GROUP, LLC;
NICK RAFAEL MOCUTA; AND
JESSE REGAN,

    Defendants.
_____/

### ORDER (1) GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION (ECF No. 13) AND (2) STAYING CASE

Now before the Court is a motion by Defendants Automation Alliance Group, LLC ("Automation") and Jesse Regan to compel Plaintiff Sama Muma to arbitrate the claims he has asserted in this action. (*See* Mot., ECF No. 13.) For the reasons explained below, the motion is **GRANTED**.[1]

**I**

Muma is a Catholic priest. (*See* Compl. at ¶1, ECF No. 1, PageID.1.) In December 2020, Muma was "interested in [starting] a legitimate side business to make extra income." (Muma Resp., ECF No. 14, PageID.72.) At around that same

---

[1] The Court concludes that it may resolve this motion without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).

1

time, Muma "requested information from Defendants [about] starting a dropshipping company" that Defendants had advertised on the internet. (Compl. at ¶10, ECF No. 1, PageID.3; Muma Resp., ECF No. 14, PageID.72.) "Dropshipping is an order fulfillment option that allows an ecommerce business to outsource procuring, storing, and shipping products to a third party." (Compl. at ¶11, ECF No. 1, PageID.3.)

"On December 5, 2020, [Muma] received an email from Regan scheduling a call with Automation" regarding his request for information about starting a dropshipping business. (*Id.* at ¶12, PageID.3.) "Prior to conducting [that] call, Defendants required [Muma] to watch" a video regarding Defendants' dropshipping businesses. (*Id.* at ¶13, PageID.3.) In that video, Defendant Nick Rafeal Mocuta said that Defendants' business model had proven profitable for several other clients. (*See id.* at ¶15, PageID.3.)

The phone call between Muma and Automation occurred on January 26, 2021. (*Id.* at ¶22, PageID.4.) During the call, "Automation's representative and Regan represented that [Muma] would be able to operate a [d]ropshipping [b]usiness to sell products through Walmart Plus['s website] in exchange for an initial fee of $22,500.00." (*Id.*)

2

On February 17, 2021, Muma executed a Walmart Account Management Services Agreement with Happy Smiles and Automation (the "Agreement"). (*See id*. at ¶25, PageID.5.) Under the Agreement, Muma made a down payment of $22,500 to Automation as an initial fee, and Happy Smiles agreed to "perform all functions for the Walmart Drop Shipping Business, including but not limited to, customer service, product research and order fulfillment[.]" (Agreement, ECF No. 13-1, PageID.66.)

The Agreement provided that the drop-shipping business would be operated through an account on Walmart's website. (*See id.*) But the Agreement further stated that "the Drop Shipping model that will be ran on your account is 100% against Walmart's terms of service." (*Id.*) The Agreement then said that, in the event that Muma's account on Walmart's website was suspended, "Happy Smiles/Automation Alliance [would] refer [Muma] to a 3rd party company to help get [his account] back up and running at [his] costs. If attempts are unsuccessful and they can't get [Muma's account] unsuspended, [Muma could] open [a] 2nd Walmart or Business Amazon Account that Happy Smiles [would] continue [his] service on free of charge (no new set-up fee)." (*Id.*)

Finally, the Agreement included an arbitration provision. That provision stated that "[a]ny dispute arising out of or related to this Agreement shall be subject to final binding arbitration." (*Id.*, PageID.64.)

3

Some time after the parties executed the Agreement, Muma consulted with legal counsel. Counsel brought to Muma's attention that the drop-shipping business was in violation of Walmart's terms of service. (*See* Compl. at ¶31, ECF No. 1, PageID.5.) Muma requested a refund of the $22,500 he had paid to Automation, but Defendants refused to refund that money. (*See* Muma Resp., ECF No. 14, PageID.74.)

## II

Muma filed this action on February 25, 2022. (*See* Compl., ECF No. 1.) In the Complaint, Muma brings the following claims against the Defendants: (1) violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.902(1)(g) *et seq.*; (2) fraudulent misrepresentation; (3) innocent misrepresentation; (4) statutory conversion under Mich. Comp. Laws § 600.2919a *et seq.*; (5) unjust enrichment; (6) racketeering in violation of 18 U.S.C. § 1962(c); (7) promissory estoppel; (8) common law conversion; and (9) civil conspiracy. (*See id.*)

Defendants Happy Smiles and Mocuta failed to respond to the Complaint, and the Clerk of the Court entered a default against both Defendants. (*See* Clerk's Entries of Default, ECF Nos. 11, 18.) On May 23, 2022, Defendants Automation and Regan filed a motion to compel arbitration pursuant to the arbitration provision in the Agreement. (*See* Mot., ECF No. 13, PageID.55.) In response, Muma argues that the

arbitration provision is unenforceable because the Agreement was illusory and lacked consideration. (*See* Muma Resp., ECF No. 14.)

For the reasons explained below, both Happy Smiles and Automation provided adequate consideration to render the Agreement enforceable. And Muma has not suggested that this dispute somehow falls outside the ambit of the arbitration provision. Defendants' motion to compel arbitration is therefore **GRANTED.**

### III

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting 9 U.S.C. § 2). The FAA "manifest[s] a liberal federal policy favoring arbitration agreements," *id.* (internal quotation marks omitted), and it "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Pursuant to the FAA, any "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id.* at 715. However, "[b]efore compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute

5

is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hergenreder*, 656 F.3d at 416. "Indeed, [t]he *sine qua non* of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000).

"Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation" – in this case, the law of Michigan. *Hergenreder*, 656 F.3d at 416. "The elements of a valid contract in Michigan are: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* at 417 (internal quotation marks omitted). "Whether the parties have mutually agreed to be bound is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (internal quotation marks omitted). Finally, "[t]he party seeking to enforce a contract has the burden of showing that it exists." *Id.*

6

IV

Muma acknowledges that the Agreement includes a binding arbitration provision. But he argues that the Agreement, and thus, the arbitration provision, is unenforceable for two reasons. (*See* Muma Resp., ECF No. 14, PageID.75.) Muma first argues that the Agreement is generally unenforceable because "Happy Smiles['] promise to perform was illusory and lacked consideration." (*Id.*) He insists that "Happy Smiles could not provide the services it was promising" because the drop-shipping business that Happy Smiles agreed to operate and manage was against Walmart's terms of service. (*Id.*) The Court disagrees.

"To have consideration there must be a bargained-for exchange." *Gen. Motors Corp. v. Dep't. of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002). Such an exchange exists where there is "a benefit on one side, or a detriment suffered, or service done on the other." *Id.* (internal quotation omitted). While courts must ensure that a contract is supported by some consideration, "courts [generally] do not inquire into the sufficiency of consideration: [a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 871 (2016) (internal quotation omitted).

The Agreement is supported by a bargained-for exchange. In exchange for Muma's payment of $22,500 (and his promise to make other payments as business was conducted under the Agreement), Happy Smiles promised to operate and

manage Muma's account on Walmart's website by, among other things, performing "customer service, product research and order fulfillment." (*See* Agreement, ECF No. 13-1, PageID.66.) Both sides of this exchange – Muma's payment and Happy Smiles' promise – are worth more than a "cent or a pepper corn," and thus there is sufficient consideration to support the Agreement.

Contrary to Muma's argument, the fact that his drop shipping account could be suspended by Walmart does not mean that Happy Smiles' promise to manage the account had no value and was thus insufficient consideration to support the Agreement. At the time the parties entered into the Agreement, it was not clear whether (or when) Walmart would discover and suspend Muma's account, and the Agreement requires Happy Smiles to perform the management functions unless and until Walmart suspended the account. Moreover, Happy Smiles itself had no control over whether Walmart would suspend Muma's account, so this is not a case where a party can effectively decide not to perform its obligations unilaterally. *See, e.g., Biram v. City of Detroit*, 2006 WL 171508, at *2 (Mich. Ct. App. Jan. 24, 2006) ("Granting defendant unbridled authority to determine whether it would execute its side of the bargain by adhering to its own rules would reduce the agreement to an illusory contract"). Furthermore, under the Agreement, Happy Smiles' obligations did not end in the event that Walmart suspended Muma's account. If Walmart took that step, Happy Smiles and Automation were obligated to refer Muma to another

platform where his drop-shipping account could be resumed, and Happy Smiles was further obligated to operate Muma's account on the new platform free of charge. (*See* Agreement, ECF No. 13-1, PageID.66.) For all of these reasons, Happy Smiles' promises under the Agreement are not illusory, and the Agreement therefore does not fail for lack of consideration.

Muma argues in the alternative that even if Happy Smiles provided sufficient consideration to support the Agreement, Automation did not do so, and Automation therefore may not enforce any portion of the Agreement – including the arbitration provision – against Muma. (*See* Muma Resp., ECF No. 14, PageID.75.) According to Muma, Automation cannot possibly have provided sufficient consideration because the Agreement does not impose a single obligation upon Automation. (*See id.*) The Court again disagrees.

As noted above, the Agreement imposes a *joint* obligation on *both* Happy Smiles *and* Automation to refer Muma to another platform if his Walmart account is suspended. (*See* Agreement, ECF No. 13-1, PageID.66.) This conditional obligation on Automation constitutes sufficient consideration to render the Agreement enforceable. *See, e.g.*, *Moffit v. Sederlund*, 378 N.W.2d 491, 497 (Mich. Ct. App. 1985) ("It is well-settled that a conditional promise may form adequate consideration."). And the Court will not second-guess the adequacy of this consideration. The joint obligation described above is more substantial than the

9

"cent or pepper corn" that constitutes sufficient consideration. Automation may therefore enforce the arbitration provision against Muma.

Given the Court's ruling compelling arbitration, the Court **STAYS** this action pending resolution of the arbitration. *See Arabian Motors Group, W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941-43 (6th Cir. 2021) (holding that district court should ordinarily stay action after compelling arbitration under the FAA).

V

For all of the reasons explained above, the Court **GRANTS** Defendants' motion to compel arbitration (ECF No. 13) and **STAYS** this action pending resolution of the arbitration.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: October 11, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 11, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
